Lane & others *v.* Old Colony and Fall River Railroad Company.

---

PETER LANE & others *vs.* OLD COLONY AND FALL RIVER RAILROAD COMPANY.

When the facts in a case are undisputed, and the evidence, with all the inferences which a jury can rightly draw from it, does not, as a matter of law, have any tendency to establish a proposition essential to the maintenance of the action, it is the duty of the judge so to instruct the jury.

Several cargoes of coal, delivered by their owner upon the wharf of a railroad corporation, were successively carried over their railroad, and at the place of destination unladen, assorted and deposited by the owner's servants in bins on the land of the corporation, adjoining the owner's land, and portions carried away and delivered to purchasers by the owner, from time to time, until he became insolvent, when the corporation forbade the taking away of any more coal, without payment of the unpaid freight and wharfage. *Held*, that the corporation had a lien upon the coal which remained, for the wharfage and freight of all the cargoes.

REPLEVIN of five hundred tons of coal. Writ dated November 17th 1857. Answer, a special property in the defendants, as common carriers, under a lien for freight. Trial in Plymouth at May term 1859, before *Hoar*, J., who made the following report thereof to the full court:

" It appeared in evidence that the plaintiffs were coal dealers in Abington, and had been accustomed to receive coal from Boston over the railroad of the defendants, paying for freight five and a quarter cents a hundred, with a deduction of twenty

per cent. in consideration of the unloading of the coal from the
cars at Abington being done by the plaintiffs; that between
July 1st and October 7th 1857 the plaintiffs received from Phil-
adelphia, and landed on the defendants' wharf at Boston, to be
transported by railroad to Abington, five cargoes of coal, and
that they were successively carried over the defendants' railroad
to Abington, and no part of the wharfage at Boston, or of the
freight, had been paid or offered by the plaintiffs to the defend-
ants at the time of the service of the writ.

" The plaintiffs called Levi Cole, Jr., who testified that he had
been in their employment since March 1857; that there were
when he went there, and had ever since been, two places upon
which the plaintiffs unloaded their coal which came upon the
cars, both of which were upon the land of the defendants; that
one of these was on the west side of defendants' main track,
just below the plaintiffs' store, and adjoining the plaintiffs' land,
and was a bin made by laying boards on the ground, so as to
make the shovelling out of the coal easier, and planking up one
end, the fence between the railroad and the plaintiffs' land form-
ing the back of the bin, and the embankment for the track
making the front of the bin; that one kind of coal was put into
this enclosure, and by the coal breaking a piece of the back
fence between thirty and forty tons of coal had run over on to
the plaintiffs' land; that the other was by a side track which ran
out from the main track on the east side, and was similar to the
first, and used to receive other kinds of coal; that as the several
cargoes arrived in the cars, the plaintiffs and their servants un-
loaded them into these bins, the cars being left on the main
track, or switched off on to the side track for this purpose; that
from these bins the plaintiffs carried away coal to deliver to
their customers in carts and wagons; that half of the first cargo
had been carried away before the second arrived, and that the
plaintiffs continued this course of selling and carrying away till
November 1857, when, the plaintiffs having failed, the defend-
ants forbade the plaintiffs from taking any more coal until the
freight should be paid, and served on the plaintiffs a notice
" that they claimed a lien on the coal for the freight thereon,

and would deliver the coal only upon payment of the freight," and presented to them a bill of the amount of freight and wharfage; and thereupon the plaintiffs replevied the coal.

" The plaintiffs here rested their case; and after argument of the questions of law, the presiding judge ruled that this evidence did not show that the defendants had so far parted with the possession of the coal, as to have lost their lien for the freight, and that if the demand of the defendants was for more than the sum due for the coal which remained, the plaintiffs could not take it away, if they were not ready to pay, and did not offer to pay the amount of freight due upon the coal which they replevied; and a verdict was taken for defendants.

" The verdict is to be set aside, and a new trial granted, if the whole court shall be of opinion that upon this evidence the plaintiffs could recover; otherwise, the case is to be sent to an assessor to determine the amount of damages, with such instructions as the court shall direct."

*C. M. Ellis,* for the plaintiffs. I. The ruling as to the delivery of the coal was incorrect, being substantially that the mere fact that part of the coal was left by the plaintiffs upon the defendants' land gave the defendants a right to take possession of it and reassert their lien.

(1.) This was a determination of an issue of fact which the court should not have assumed. *Richardson* v. *Boston,* 19 How. 263. *Boggs* v. *Martin,* 13 B. Mon. 239. *Phillips* v. *Bistolli,* 2 B. & C. 511. 2 Parsons on Con. 322.

(2.) The facts proved, namely, that the freight cars had reached their terminus, that the plaintiffs had taken actual possession of the coal, unloaded it, assorted it, and put it into bins; the position, structure and use of the bins; the sale and delivery of the coal in the usual course of business with the defendants' knowledge and consent; the character of the act of the defendants' agent in forbidding the plaintiffs to take any more coal; the object of the notice; the use of the premises; together with the intention of the parties as shown by these facts, were all questions for the jury; and, if specially found for the plaintiffs, would have amounted to a delivery.

What is a delivery depends on the nature and position of the property, the course and custom of the business. This was the final delivery, within the tests laid down in the decided cases, which illustrate it in many forms. What is surrender by the carrier or receipt by the consignees, is a fact to be decided in view of the convenience and necessities of trade. Heavy and bulky articles are not required to be delivered in the same manner as light packages; and acts of receiving great bales and merchandise at a railroad station would amount to possession, which might not amount to possession at the wagon or yard of a wagon carrier. *Lewis* v. *Western Railroad*, 11 Met. 509 *Thomas* v. *Boston & Providence Railroad*, 10 Met. 477. *Boynton* v. *Veazie*, 24 Maine, 286. *Page* v. *Carpenter*, 10 N. H. 77. *Stamps* v. *Bass*, 7 How. (Miss.) 255.

(3.) The jury might well have found either that the plaintiffs were tenants at will of the places where the bins were built, or that the defendants had a license to use them. *Barrett* v. *Goddard*, 3 Mason, 107. *Colburn* v. *Richards*, 13 Mass. 420. *Coleman* v. *Foster*, 1 H. & N. 37. Part of the coal, when taken by the defendants, was actually on the plaintiffs' land.

II. The act of the defendants in taking possession, and the unlawful assertion of dominion over any of the coal, gave the plaintiffs a right to recover without a tender of the freight. *Boardman* v. *Sill*, 1 Campb. 410, note. *Adams* v. *Clark*, 9 Cush. 215.

III. The defendants originally could have had no general lien, at most only a lien on each cargo for its freight; and the jury should have found what cargoes had been taken away, and what coal claimed by the defendants was on the plaintiffs' land. General liens are not favored. Angell on Carriers, § 357.

*J. H. Clifford & C. G. Davis*, for the defendants, cited Abbott on Shipping, 245, 246, 288; Angell on Carriers, § 370; *Sodergreen* v. *Flight*, cited in 6 East, 622; *Arnold* v. *Delano*, 4 Cush. 33; Curtis on Merchant Seamen, 245; *Wilson* v. *Kymer*, 1 M. & S. 157; *Ward* v. *Felton*, 1 East, 507; *Scarfe* v. *Morgan*, 4 M. & W. 273; Cross on Lien, 46, 289, 290.

This case was decided in June 1860.

HOAR, J.　It is true that where there is evidence in a case upon which it would be competent for a jury to find a verdict for a plaintiff, an instruction by the presiding judge to the jury at the trial, that they ought to return a verdict for the defendant, would be erroneous.　The sufficiency and the preponderance of the evidence are matters wholly within the province of the jury, except upon a motion for a new trial after verdict.

But where the facts are undisputed, and the evidence, with all inferences which a jury can rightfully draw from it, does not, as a matter of law, have any tendency to establish a proposition which is essential to the maintenance of the plaintiffs' case, it is the duty of the judge so to instruct the jury.

In this case, the defendants having received upon their wharf, and transported over their railroad, the plaintiffs' coal, had a lien upon it for the wharfage and carriage.　Their right to retain it for their lien was indisputable, unless they had lost the lien by parting with the possession of the coal.　The plaintiffs, to maintain their action of replevin, must show that they were entitled to the possession.　To establish this, it was incumbent upon them to prove a complete delivery of the coal, sufficient in law to terminate the carriers' lien.　This was the fact which the jury must find upon competent evidence, or their verdict must be for the defendants.

The jury were instructed at the trial that this fact was not proved; and the whole court are of that opinion.

The evidence submitted to the jury was the testimony of a single witness, with certain admissions of the parties.

There was no evidence that the plaintiffs had paid or tendered any part of the money due to the defendants, or were ready or offered to pay it before they replevied the coal; nor of any agreement to give credit for it; nor that enough of each cargo did not remain to be ample security for the freight due upon that particular parcel.

The plaintiffs, by the agreement of parties, were to perform the labor of unloading the coal from the cars; but this, being done upon the premises of the defendants, did not devest the possession.　The jury had no evidence of any lease of the bins

to the plaintiffs. There was nothing to show that the defendants might not have used the bins for any other coal, or required the plaintiffs to unload the coal at some other place, at their pleasure.

It was then material to consider what delivery of the coal would be effectual to determine the lien. By the contract, no credit for the freight being stipulated, the delivery of the coal by the defendants, and the payment of the freight by the plaintiffs, were acts to be done at the same time. A delivery may be complete for one purpose, and not for another. The cases cited by the plaintiffs' counsel to show what constitutes a complete delivery, are all cases which decide either what delivery is sufficient to pass the property as between vendor and vendee, or what is sufficient to terminate the liability of a carrier. A delivery may be complete, so far as either of those purposes is concerned, and yet be upon an implied condition as to payment; and upon failure to perform this condition, the right of possession of the party making the delivery will remain unimpaired. This is a familiar doctrine as between vendor and vendee. If a man purchases goods at a shop for cash, and they are handed to him, or put by the shopkeeper into his wagon, and he then refuses to pay for them, no doubt they may be taken back.

The same principle applies to the lien of a carrier. The right of the carrier to payment for the carriage first exists when he has performed the contract on his part; and his lien would not be lost, were the delivery even much more unequivocal than that on which the plaintiffs here rely. Suppose the railroad company should allow a customer, for whom they had brought a lot of flour, to unload it from the cars on to his wagon, and, as he started with the load, should demand the freight, could it be supposed that they would have no right to retake the flour, if he should refuse to pay? But suppose, instead of one load, there should be a hundred barrels, and the first load should be allowed to go without payment, the rest being taken from the cars and put upon the platform in the freight house, the company knowing that enough was left to make them secure, and the demand

should be made as the owner was about removing the last load, could this destroy the right to retain for their lien ? Where two acts are to be done simultaneously, under a contract, the obligation to do each is dependent upon the performance of the other, and each is done upon the implied condition that the other shall be done likewise. The plaintiffs, in the absence of express agreement or regulation, might say that they would not pay their money until they received their goods ; and the defendants, that they would not deliver the goods until they had received their money. If the goods were, as in this case, not capable of instantaneous delivery, it would be impossible to perform the contract unless one or the other should begin. And we think the one who begins loses none of his rights by so doing, in the absence of evidence that he has agreed to waive them.

As there was nothing in the case to show that enough of each cargo was not left to satisfy the lien for the freight of that cargo, and as the plaintiffs made no demand of any separate portion of the coal, and proved no readiness to pay any freight whatever, no question seems to arise as to the extent of the defendants' lien. But we think it clear, for various reasons, that they had a lien on the whole, for the whole sum claimed. Although the different cargoes which were carried were perhaps at first so far distinct subjects of contract, that the defendants might have delivered and demanded the freight for one, before delivering another, and the plaintiffs might have demanded one, without waiting for the arrival of the whole, yet we think the mingling them together indiscriminately in the bins shows that the whole was regarded by the parties as a continuous carriage and delivery of an entire quantity. But if this were not so, and the defendants had a separate lien upon each cargo for its freight and wharfage, then, as the plaintiffs mingled the several parcels so that they could not be distinguished, they must be held to have extended the lien upon each to the whole quantity remaining. This principle is well settled in regard to two persons having the general ownership of two parcels of similar goods ; and it seems equally applicable to a case where one of them has a special property.

13 *

According to the agreement at the trial, the case is to be sent to an assessor, with directions to assess as damages the whole sum due for freight and wharfage, with interest from the date of the writ, unless that agreement is now changed by the parties